NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2974-24

DELLA M. BOURNES,

      Plaintiff-Respondent,

v.

SHAWN J. HARRIS,

      Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

April 30, 2026

APPELLATE DIVISION

Submitted April 14, 2026 – Decided April 30, 2026

Before Judges Firko, Perez Friscia and Vinci.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-1115-06.

Shawn J. Harris, self-represented appellant (John Bonino, on the brief).

Bernstein & Manahan, LLC, attorneys for respondent (James P. Manahan, on the brief).

The opinion of the court was delivered by

FIRKO, J.A.D.

In this post-judgment dissolution matter, defendant Shawn J. Harris appeals from the Family Part's April 4, 2025 order partially granting plaintiff

Della M. Bournes's motion to reinstate and enforce child support arrears and denying his cross-motion to vacate the arrears. For the reasons that follow, we affirm substantially for the reasons expressed by Judge Robert T. Lougy in his order.

I.

The following facts are derived from the record. The parties divorced in 2005 in the State of Texas after three years of marriage. They had two children born in 2001 and 2002, who were unemancipated at the time the Texas divorce decree was entered. In the parties' marital settlement agreement (MSA), which was incorporated into the decree, defendant agreed to pay $600 per month in child support for ten months each year, August through May, and plaintiff agreed to pay defendant $100 per month for two months, June and July. Thus, defendant's child support obligation was $5,800 annually. The MSA stated it was "intended to be the full and entire settlement and agreement" between the parties and "should be interpreted and governed by the laws of the State of Texas."

According to defendant, in August 2005, he and the children's grandmother[1] became the children's primary caretaker. The children attended

---

[1] The parties do not specify whether the maternal or paternal grandmother became the children's primary caretaker. Judge Lougy presumed the children

A-2974-24

school in Denver, Colorado from pre-kindergarten through the sixth grade. Plaintiff still resided in Texas. Defendant claims the children had summer visits with plaintiff until 2007, when Texas Child Protective Services (TCPS) was contacted and removed them from her care. Ultimately, plaintiff lost custody of the children.[2] Defendant claimed the children had not lived with plaintiff since 2014, when they began living with their grandmother in New Jersey while he resided in Pennsylvania.

Defendant alleges plaintiff filed a child support enforcement action against him in New Jersey sometime in 2016, which the court granted in March 2016. The probation department enforced child support against defendant as payor at $600 per month based on twelve months, or $7,200 annually, rather than $5,800 annually, as stipulated in the MSA. Defendant maintains he was not served with the motion and attempted to "rectify" the child support issue as a self-represented litigant but was unsuccessful.

Between 2016 and 2023, an audit revealed defendant paid $19,020.54 in child support through probation. Defendant then retained counsel. In March

_____

began living with their maternal grandparents. There is no evidence in the record to refute this presumption.

[2] Defendant states an "unattainable protective [o]rder" was entered in the State of Texas regarding plaintiff's loss of custody.

A-2974-24

2024, defendant's[3] counsel filed a motion to retroactively emancipate both children because they had attained their respective eighteenth birthdays. Plaintiff did not oppose the motion. On May 17, 2024, the judge granted defendant's motion and terminated defendant's child support obligation retroactive to the date of each child's eighteenth birthday. The judge noted in his order that defendant certified neither child attended post-secondary high education, they had started working and were living "with their (presumptively maternal) grandparents since 2016." The probation department was directed to adjust its records.

On July 15, 2024, the judge entered a Uniform Summary Support Order (USSO) stating defendant's arrears were $22,734.52 as of June 24, 2024. On October 1, 2024, a different judge issued a second USSO, which stated, in part, "[c]ase was arrears only and arrears were paid in full." Probation was ordered to close the case and terminate enforcement.

On February 4, 2025, plaintiff filed a motion to vacate the October 1, 2024 USSO, re-establish arrears, which existed as of each child's emancipation date, and for counsel fees and costs. In her moving certification, plaintiff did not challenge either child's emancipation but sought relief from probation's

_____

[3] Defendant is listed as "plaintiff" in the March 2024 New Jersey action. For the sake of clarity, we refer to him as "defendant" for consistency in our opinion.

"mistake" in "administratively" vacating all arrears. Plaintiff certified she was unaware the October 1, 2024 USSO was going to be entered because she had no prior notice of it.

On February 19, 2025, Judge Lougy conducted a case management conference and distributed a probation audit dated February 12, 2025 to the parties. On March 20, 2025, defendant filed a cross-motion seeking to: deny plaintiff's motion, relieve him of any child support obligations, award reimbursement of $654 from plaintiff for alleged child support overpayments, and for counsel fees and costs.

On April 4, 2025, the judge held oral argument on the motions and entered an order that day partially granting plaintiff's motion and denying defendant's cross-motion. In his Rules 1:6-2(f) and 5:5-4(f) findings of fact and conclusions of law included with the order, the judge determined the May 17, 2024 order terminated defendant's child support obligation retroactive to each child's emancipation date but did not vacate the arrears he owed as of that date.

The judge rejected defendant's argument that he should not have paid child support because the children have lived with him since 2016. The judge emphasized "the record is clear" and noted defendant never made a "successful application to modify his child support obligation." The judge reasoned

defendant essentially requested "an impermissible retroactive reduction in his child support." Accordingly, the judge ordered probation to reinstate the arrears in defendant's account as of the date of termination of his child support obligation—December 20, 2020—and enforced repayment at the rate of $100 per week.

The judge considered both parties' applications for counsel fees and costs and analyzed the Rule 5:3-5(a) factors, RPC 1.5(a), and the relevant case law. In denying the applications, the judge found both parties "asserted largely reasonable positions." The judge held plaintiff was successful and defendant was not. However, the judge held plaintiff should be responsible for her own fees because defendant did not seek the relief granted in the October 2024 order, and there was no basis to hold him "accountable for counsel fees to fix an administrative error he did not invite or seek." The judge denied defendant's application for counsel fees because he failed to include an affidavit of services as required by Rule 5:3-5(c).

On April 22, 2025, a third USSO was entered memorializing the judge's decision. This appeal followed.

Defendant presents the following arguments for our consideration:

> (1) the judge erred in failing to find that New Jersey lacked jurisdiction to modify defendant's child support obligation issued in the Texas divorce decree;

(2) the judge erred in failing to enforce defendant's child support pursuant to the terms of the Texas divorce decree; and

(3) the judge erred in granting plaintiff's request to enforce arrears based on the improperly modified child support obligation and in denying defendant's request to vacate same.

We find no merit in these arguments.

II.

"[W]e accord great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). This is because the family court has "special jurisdiction and expertise in family matters." Cesare v. Cesare, 154 N.J. 394, 413 (1998). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). The Uniform Interstate Family Support Act (UIFSA), N.J.S.A. 2A:4-30.124 to -30.201, provides "unity and structure in each state's approach to the modification and enforcement of child support orders," both nationally and internationally. Youssefi v. Youssefi, 328 N.J. Super. 12, 20 (App. Div. 2000).

For enforcement purposes, New Jersey may register a support order issued by an initiating tribunal in the current home state of the children. N.J.S.A. 2A:4-30.168. The registration process begins by one party filing a

request to register the out-of-state order with New Jersey's Family Part. N.J.S.A. 2A:4-30.169. Pursuant to these statutes, plaintiff filed and registered the Texas divorce decree in New Jersey in 2013.

After registration, defendant had the right to contest the validity or enforcement of the registered order, by requesting a hearing within twenty days after notice of the registration. N.J.S.A. 2A:4-30.172(b)(2). Pursuant to N.J.S.A. 2A:4-30.175, "[c]onfirmation of a registered support order, whether by operation of law or after notice and hearing, precludes further contest of the order with respect to any matter that could have been asserted at the time of registration." "[T]he law of the issuing state[,]" rather than the law of New Jersey, continues to govern "the nature, extent, amount, and duration of current payments under a registered support order." N.J.S.A. 2A:4- 30.171(a)(1).

### III.

### A.

We reject defendant's argument that New Jersey lacked jurisdiction under UIFSA to enforce or modify his child support obligation set forth in the MSA, which was incorporated into the Texas divorce decree. Consistent with UIFSA, New Jersey properly registered the child support order on July 16, 2013, as reflected in probation's financial audit report. Defendant acknowledges the children began living in New Jersey around that time while

8

he resided in Pennsylvania. Thus, contrary to defendant's argument, New Jersey was obligated to enforce Texas's child support order.

"UIFSA governs jurisdiction over the establishment, modification, and enforcement of a child support order when at least one of the parties to the action in which support is requested lives outside of the State." Fall & Romanowski, Current N.J. Family Law, Child Custody, Protection & Support § 33:3-1 (2026). Under UIFSA, "a court that enters an order establishing child support retains continuing[,] exclusive jurisdiction to modify the order, and that court's orders remain the controlling child support orders for purposes of enforcement, until continuing, exclusive jurisdiction is conferred on another state's tribunal by operation of the Act." Lall v. Shivani, 448 N.J. Super. 38, 46 (App. Div. 2016); see also N.J.S.A. 2A:4-30.133(a)(1). Therefore, a non-issuing tribunal may register the child support order of an issuing tribunal but may not modify it barring a finding of specific circumstances. Ibid.; see also N.J.S.A. 2A:4-30.168; N.J.S.A. 2A:4-30.133(c). We conclude the judge properly found that New Jersey had jurisdiction under UIFSA to enforce and modify defendant's child support obligation issued in the Texas divorce decree.

### B.

Next, defendant contends under UIFSA, Texas was the "issuing tribunal" and had continuing, exclusive jurisdiction, and New Jersey only had

9

jurisdiction to enforce the order but not modify it absent the filed written consent of both parties, citing Lall, 448 N.J. Super. at 43.  In particular, defendant maintains the judge's enforcement of $600 per month for child support for twelve months per year instead of ten months, and plaintiff's obligation to pay $100 for June and July, as per the MSA, was not accurately enforced.  According to defendant, the improper enforcement amounted to a modification of the Texas divorce decree, which exceeded this State's jurisdiction.  As such, defendant argues he improperly paid plaintiff $19,020.54, when he was only required to pay $18,366.54, an overpayment of $654.

Plaintiff counters defendant's appeal should be dismissed as untimely because he failed to appeal from the May 17, 2024 order within the required forty-five-day timeframe because that order granted a vacation of arrears arising after each child's emancipation, citing Rule 2:4-1(a).  Plaintiff avers defendant is equitably estopped from challenging the arrears that accrued before the emancipation events by virtue of his March 22, 2024 filing because he waited "nine years" to challenge enforcement, which would result in prejudice to her and the children.  Plaintiff also contends defendant waived his right to pursue his claims.  In that regard, plaintiff argues defendant accepted the judge's ruling when he sought to vacate only the arrears that accrued after

each child's emancipation, citing Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 503-04 (1996), and therefore, the equitable doctrine of laches applies.

We have already addressed New Jersey's obligation to enforce the child support award entered in Texas.  Plaintiff's argument that defendant's appeal is untimely under Rule 2:4-1(a) has merit because he failed to challenge the May 17, 2024 order, which vacated only arrears arising after the children's emancipation within the forty-five-day period.  Defendant asserts he was unaware of his overpayment until the February 19, 2025 case management conference when he received the audit.  In any event, we consider the merits of defendant's appeal.

Here, defendant began accruing arrears in 2016.  Defendant had access to the probation account and the child support being charged at all times before he filed his May 17, 2024 emancipation motion.  Moreover, defendant could have requested a financial audit at any time and requested probation to verify the amount charged, but he failed to do so.  Accordingly, we perceive no basis to disturb the April 4, 2025 order.

C.

Finally, we consider defendant's argument that the judge erred in granting plaintiff's request to enforce arrears and denying defendant's request to vacate arrears.  N.J.S.A. 2A:17-56.23a, the anti-retroactive support statute,

11

prohibits the retroactive vacation or modification of accumulated child support arrears, and provides:

> No payment or installment of an order for child support, or those portions of an order which are allocated for child support . . . shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.

The statute "was enacted to insure that ongoing support obligations that became due were paid." Mahoney v. Pennell, 285 N.J. Super. 638, 643 (App. Div. 1995). We have held that the statute's applicability "is limited to prevent[ing] retroactive modifications decreasing or vacating orders allocated for child support." Keegan v. Keegan, 326 N.J. Super. 289, 291 (App. Div. 1999); see also Walles v. Walles, 295 N.J. Super. 498, 514 (App. Div. 1996) (finding the trial court's decision to retroactively reduce child support payments "violated the statutory mandate"). Moreover, we noted in Diehl v. Diehl, 389 N.J. Super. 443, 452 (App. Div. 2006), that retroactive modification is limited to the date of the moving party's "first motion for modification." See also Ibrahim v. Aziz, 402 N.J. Super. 205, 214 (App. Div. 2008).

However, while N.J.S.A. 2A:17-56.23a as a general matter prohibits the retroactive reduction of court-ordered child support, the statute's anti-retroactivity requirement has been construed to be inapplicable to a reduction

12

of child support based on a child's emancipation. Bowens v. Bowens, 286 N.J. Super. 70, 73 (App. Div. 1995) (holding the statute "does not bar the cancellation of child support arrearages which accrued subsequent to the date of the emancipation of the minor"); see also Mahoney, 285 N.J. Super. at 643 (emancipating and terminating child support for two children two years apart in age, with each emancipation effective retroactive to each child's eighteenth birthday and holding "[w]here there is no longer a duty of support by virtue of a judicial declaration of emancipation, no child support can become due").

Here, the second USSO erroneously directed probation to close defendant's account in contravention of N.J.S.A. 2A:17-56.23a, because it amounted to a retroactive reduction. Thus, the judge correctly granted plaintiff's motion to reinstate arrears. We reject defendant's characterization that the judge modified the obligation in the April 4, 2025 order. Rather, the judge properly reinstated improperly vacated arrears.

"The trial court has substantial discretion in making a child support award." Foust v. Glaser, 340 N.J. Super. 312, 315 (App. Div. 2001). "If consistent with the law, such an award 'will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Id. at 315-16 (quoting Raynor v.

13                                                      A-2974-24

Raynor, 319 N.J. Super. 591, 605 (App. Div. 2009)) (internal quotation marks omitted).

Regarding defendant's request for reimbursement for the overpayment of $654, the judge duly noted:

> [T]he record is clear[.] Defendant made no successful application to modify his child support obligation. Thus, [d]efendant effectively requests an impermissible retroactive reduction in his child support. Probation shall reinstate these arrears in [d]efendant's account as of the date of termination of his child support obligation—December 20, 2020[,]— and enforce repayment at a rate of $100 per week, which will allow for full repayment in approximately three years.

The record supports that determination.

To the extent we have not addressed defendant's remaining arguments, we find they are without sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

14                                                      A-2974-24