**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3277-17T3

FERNANDO ZAPATA,

    Plaintiff-Appellant,

v.

MONICA ZAPATA,

    Defendant-Respondent.

_____

        Submitted November 7, 2019 – Decided  January 29, 2020

        Before Judges Suter and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FM-16-0252-10.

        Weinberger Divorce & Family Law Group, LLC attorneys for appellant (Jessica Ragno Sprague, on the briefs).

        Dario, Albert, Metz & Eyerman, LLC attorneys for respondent (Paul Joseph Concannon, on the brief).

PER CURIAM

I.

Plaintiff Fernando Zapata appeals the orders denying his request to terminate payment for his child's college expenses and child support and denying reconsideration. He argues he should no longer provide support because his daughter does not communicate with him. We affirm in part, reverse in part, and remand for further proceedings.[1]

Plaintiff and defendant divorced in 2011. They had two children. Their son was emancipated in 2014. Their daughter started college in 2014 and was a full-time college student at all times relevant to this appeal.[2]

The parties' property settlement agreement (PSA) was incorporated into their dual final judgment of divorce. It addressed college expenses:

> [t]he parties have encouraged their children to obtain a college degree. In that regard, Fidelity Trust accounts were established for each child. However, since the parties were no longer financially able to contribute to those accounts, the funds were transferred to the

---

[1] Plaintiff filed a motion to strike portions of defendant Monica Zapata's appendix and to remove any reference to those portions of the appendix in her brief. Defendant filed a cross-motion to supplement the record and strike statements in the plaintiff's brief. We denied plaintiff's motion without prejudice and held defendant's cross-motion for consideration by this panel. In light of our decision, we now deny both the motion and the cross-motion in their entirety.

[2] She attended a private in-state college and resided there, graduating in May 2019.

A-3277-17T3

savings accounts in each child's name. The parties agree that their children's college education, including but not limited to: tuition, reasonable transportation costs, books, school activities/events shall—be funded in the following order:

a) Any awarded college scholarship and/or grant;

b) Any work study and/or school loans;

c) The child's college (Fidelity) account until exhausted;

d) Husband and Wife shall contribute according to their ability to pay.

Under the PSA, plaintiff agreed to pay child support of $246 per week[3] based on his base salary in 2010 of $121,313 (with a $250 supplement in 2010) and defendant's base salary of $70,000 (with a bonus of $3000 in 2010 that was not guaranteed), and "with an alimony payment by [plaintiff] to [defendant]." The child support obligation "shall continue after the date of the [divorce] and continue for each child until each child is emancipated."

---

[3] The sole parenting worksheet shows that alimony received by defendant was included in her side of the calculation.

A-3277-17T3

In September 2016, plaintiff filed a motion to terminate child support and his obligation to pay college education expenses.[4] He alleged that beginning in 2015, their daughter stopped all communication with him. She made "vile and vulgar comments" about him. She did not respond to his letters. He asked to terminate his support for her because she "clearly want[ed] no further relationship with [him]." He last saw her on her twentieth birthday in 2016.

This was the second time plaintiff asked the court to terminate his support obligations. In a series of orders issued on October 21, 2014, the court ordered plaintiff to continue to pay child support, but emancipated their son, and directed that a plenary hearing be conducted on the "issues of [the] factors—Newburgh.[5]" Another order on the same date required plaintiff and his daughter to attend counselling, providing:

> [t]hat both [p]laintiff and [daughter] shall attend mandatory/court ordered joint counselling sessions within ___ days of this order. Failure of [daughter] to attend such counseling sessions, will be deemed a waiver of her receipt of any continued future college payments/support obligations to be made on behalf of the [p]laintiff.

---

[4] Plaintiff also requested an award of attorney's fees and to adjust the date he paid alimony. The court denied both. Plaintiff did not appeal the alimony issue.

[5] Newburgh v. Arrigo, 88 N.J. 529 (1982).

There was never a plenary hearing.

In response to plaintiff's 2016 motion, defendant filed a cross-motion to enforce plaintiff's payment of child support and college expenses, and for an award of counsel fees. She requested plaintiff pay two-thirds of their daughter's college expenses after applying scholarships, grants and federal loans. Their daughter was a third-year engineering student with excellent grades. Although scholarships and grants "substantially reduced" her educational expenses, defendant already had paid $16,907 of their daughter's college, the daughter took out $21,000 in loans and plaintiff paid $3715.16. Defendant claimed plaintiff's income was double hers, affording him the ability to contribute more to the child's education. She also requested plaintiff continue to pay child support because their daughter was not emancipated.

Defendant blamed plaintiff for the "strain" in his relationship with their daughter. On her twentieth birthday, plaintiff emailed her: "I thank you very much for inviting me to participate, but I must ask you not to invite me again as I cannot afford such expensive dinners, much less when I have to pay for people I don't even know and people that don't even talk to me." On her twenty-first birthday, he emailed her saying, in part, this was a "new chapter" and

"beginning" for her. "Today you can no longer blame others for what you do," signing off as "[y]our forgotten dad."

Their daughter also certified she attended four joint counselling sessions with her father in 2014 and 2015. The sessions were jointly terminated by the counselor, her father and herself because "they were no longer necessary." She denied terminating the sessions unilaterally. She disputed plaintiff's representation about a lack of contact with her. He attended Christmas dinner in 2015 and they exchanged text messages in 2016. She did not refuse to communicate with her father. Her relationship with him was "broken, but . . . not destroyed."

Plaintiff agreed there had been five counselling sessions: two with just the daughter and the counselor; one with just plaintiff and the counselor; and two with the two of them and the counselor. He denied terminating the sessions. The counselor indicated it was up to their daughter to continue the sessions, who did not feel they were needed. He did not agree with her attending private schools because of the costs. He claimed he was not consulted about her choice of college. He did not deny the emails he sent her. The parties' son alleged in his certification that his sister "spurned" attempts by plaintiff to communicate with her and "refused to participate" in events with him.

A-3277-17T3

On December 8, 2017, the court denied plaintiff's request to terminate support because he failed to show that their daughter did not comply with the 2014 order. It granted defendant's request to require plaintiff to pay two-thirds of her college expenses because plaintiff did not show any reason to alter this agreement. The order from 2014 did not require a set number of sessions. The court found plaintiff did not show a change in circumstances warranting a change in his support obligation. The only factor he addressed from Newburgh was the parent-child relationship. There was no requirement of a relationship for the non-custodial parent to have the obligation to "defray college expenses."

On reconsideration, plaintiff alleged the court did not consider the factors under Newburgh. He claimed he would not have paid for their daughter's college given her behavior if the parties were residing together (factor one). The court had not made the finding that he had the financial ability to pay (factor one and four). It did not consider the financial resources of the parties, (factor six), nor the child's ability to earn income or her financial resources (factors eight and nine). He objected to his daughter enrolling in private school because of the cost and suggested a public university. Defendant requested contribution toward the child's college expenses three years after she enrolled. Plaintiff disputed the

PSA required him to pay two-thirds of the expenses. The court failed to consider he was paying alimony.

Plaintiff requested to modify child support, claiming he was still paying for the emancipated son. He again requested an award of counsel fees. Defendant opposed reconsideration.

The court denied reconsideration on February 16, 2018, finding it "made clear, on both the record and written decision" that it considered the factors enumerated under Newburgh and Gac.[6] He "failed to show that termination of his obligation towards college expenses was warranted."

The court supplemented its decision in March 2018, clarifying it denied plaintiff's request to modify child support because he had not requested that relief in his original motion. It denied plaintiff's request to terminate support for their daughter because the parties agreed to pay college expenses in their PSA and plaintiff did not show the PSA should be modified or set aside.

On appeal, plaintiff argues the court erred by requiring plaintiff to pay child support for their daughter because she should have been emancipated and because the Child Support Guidelines do not apply. He contends the court erred by ordering him to pay two-thirds of her college expenses. The trial court failed

---

[6] Gac v. Gac, 186 N.J. 535 (2006).

A-3277-17T3

to consider the <u>Newburgh</u> factors. In the alternative, plaintiff requests a remand for a plenary hearing on these issues. He argues the trial court erred by denying his request for attorney's fees.

## II.

We accord "great deference to discretionary decisions of Family Part judges[,]" <u>Milne v. Goldenberg</u>, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters . . . ." <u>N.J. Div. of Youth & Family Servs. v. M.C. III</u>, 201 N.J. 328, 343 (2010) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 413 (1998)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." <u>Hitesman v. Bridgeway, Inc.</u>, 218 N.J. 8, 26 (2014) (quoting <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)). "Reversal is reserved for only those circumstances in which we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" <u>Avelino-Catabran v. Catabran</u>, 445 N.J. Super. 574, 587 (App. Div. 2016) (quoting <u>N.J. Div. of Youth & Family Servs. v. M.M.</u>, 189 N.J. 261, 279 (2007)).

A-3277-17T3

We review for abuse of discretion the denial of plaintiff's request to terminate support for his daughter. See Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012). In New Jersey, a parent has the duty to support a child until the child is emancipated. Gac, 186 N.J. at 542. A non-custodial parent, such as plaintiff, can be required to pay child support for an unemancipated child and also contribute to the unemancipated child's college expenses. "The payment of college costs differs from the payment of child support for a college student." Jacoby, 427 N.J. Super. at 121 (citing Hudson v. Hudson, 315 N.J. Super. 577, 584 (App. Div. 1998) (providing "[c]hild support and contribution to college expenses are two discrete yet related obligations imposed on parents")). Plaintiff's November 2016 motion requested to terminate both obligations.

Addressing first the issue of college expenses, the parties agreed in their PSA that they would pay for their children's college education and "contribute according to their ability to pay." They agreed the children would be emancipated upon "reaching the age of eighteen . . . years, or the completion of four . . . academic years of college education, within a period no longer than five . . . academic years." Their daughter was not emancipated at the time plaintiff filed to terminate support because she was attending college.

A parent's obligation to pay college expenses generally involves a "two-fold" analysis "for an academically motivated unemancipated child . . . ." Ricci v. Ricci, 448 N.J. Super. 546, 579 (App. Div. 2017). "First, it demands a determination of whether equitable or other considerations militate against parents paying college costs." Ibid. "Second, the court must scrutinize whether the parents are financially capable of contributing." Ibid.

Plaintiff's only argument against enforcement of the PSA's provision requiring him to pay college expenses is that he and his daughter have no relationship. We agree with the trial court that her participation in the counselling sessions did not require a termination of plaintiff's obligation to pay college expenses under the October 21, 2014 order. The parties all agreed there were counselling sessions. That order did not include a specific number of counselling visits nor say who could end the sessions.

However, the record shows the parties have a different view of their relationship. Plaintiff contends they have no relationship; their daughter contends the relationship is broken, but still exists. Plaintiff contends he was not consulted about her selection to attend the college from which she recently graduated. She contends he paid the application fee and is a graduate of the same college. There was an order from 2014 that required a plenary hearing.

Even if the trial court could have reevaluated the need for this plenary hearing, it did not do so despite the parties' disagreement on this issue. The court erred by not conducting a plenary hearing on this issue. "[W]here the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful in deciding such factual issues, . . . a plenary hearing is required." Jacoby, 427 N.J. Super. at 123 (quoting Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)). We reverse the orders that denied plaintiff's request to terminate his payment of college expenses and order a plenary hearing to determine if the parties' relationship provided an equitable basis not to enforce this portion of the PSA.

The next step in the analysis is to determine the amount of the contribution, assuming the college support obligation continues under the PSA. The PSA listed the incomes of the parties as of 2011, but it did not provide they would pay college expenses based on that income or based on a two-thirds, one-third allocation. We are constrained to reverse the portion of the prior order that allocated the responsibility by two-thirds to plaintiff and one-third to defendant. "[A] trial court should balance the statutory criteria of N.J.S.A. 2A:34-23(a) and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents

must contribute to a child's educational expenses." Gac, 186 N.J. at 543. Although the trial court indicated it had undertaken that analysis, it was not evident from the record. A court is required to make findings of fact and reach conclusions of law. See R. 1:7-4(a). On remand, the trial court will need to evaluate the factors under N.J.S.A. 2A:34-23(a) based on updated financial information.

The court denied plaintiff's request to modify child support because he filed a motion to terminate support not to modify it. However, in granting defendant's cross-motion, the court required plaintiff to continue to make the same support payments based on a finding there was no change of circumstances. This was an error. "[T]he child's attendance at college is a change in circumstance warranting review of the child support amount." Jacoby, 427 N.J. Super. at 113. Also, the parties' son had been emancipated, which was an additional change in circumstances. Mahoney v. Pennell, 285 N.J. Super. 638, 643 (App. Div. 1995) (providing "[w]here there is no longer a duty of support by virtue of a judicial declaration of emancipation, no child support can become due"). Where "circumstances have changed in such a way that [the support provision] would no longer be equitable and fair, the court . . . remains

free to alter the prior arrangement." Lepis v. Lepis, 83 N.J. 139, 161 n.12 (1980).

The existing child support order was based on the Child Support Guidelines for two children. The Guidelines no longer applied because their daughter was living away from home at college and the other child was emancipated. See Jacoby, 427 N.J. Super. at 113 (providing "[r]esort to the [guidelines] to make support calculations for college students living away from home is error"). It was error for the court not to redetermine plaintiff's support obligation based on the statutory factors under N.J.S.A. 2A:34-23(a).

Plaintiff argues the trial court erred by denying his request for attorney's fees because it did not provide reasons. "Rule 4:42-9(a)(1) authorizes the award of counsel fees in a family action on a final determination pursuant to Rule 5:3-5(c)." Gotlib v. Gotlib, 399 N.J. Super. 295, 314 (App. Div. 2008). In determining the fee award, there are a number of factors to be considered as set forth in Rule 5:3-5(c). As long as there is support for the determination, the trial court's factual findings will not be disturbed whether or not every factor is discussed. See Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013). The assessment of attorney's fees is an issue left to the sound discretion of the trial court. Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010).

14

The court did not explain its decision for denying fees. <u>Rule</u> 1:7-4(a) requires that in all actions tried without a jury the court "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law . . . ." We are constrained to reverse the fee orders for that reason. Also, in light of our remand, the decision on fees should await the conclusion of the further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3277-17T3